CIACCIO, Judge.
This appeal involves a suit for injuries sustained in an automobile accident. On March 30, 1986 at approximately midnight, Joseph Allen Hebert was returning to New Orleans from the Gulf Coast with his fiance, Riley M. Murphy. As they were completely stopped in traffic, their vehicle was struck from the rear by a vehicle driven by Kerry Robertson.
Mr. Hebert and Ms. Murphy subsequently brought this suit for personal injuries incurred in this accident against Kerry Robertson, Robertson’s insurer, Cumis Insurance Society, Inc. and Hebert’s uninsured motorist carrier, John Hancock In *575 demnity Company. Prior to trial, plaintiffs settled with Robertson and his insurance company for the full amount of the Cumis policy, $30,000.00. This settlement included $1,000.00 for the property damage to Mr. Hebert’s vehicle and $500.00 for the full satisfaction of Ms. Murphy’s claim. John Hancock tendered $5,000.00 under the medical payment provisions of Mr. Hebert’s policy. Despite written demand by plaintiff that his damages exceeded the primary policy limits, John Hancock refused to make any additional payments under the underinsured motorist provisions of the policy. Plaintiff then amended his suit alleging that John Hancock’s conduct was arbitrary and capricious, seeking statutory penalties and attorney’s fees on this basis.
At trial, the parties stipulated that Kerry Robertson was solely at fault in causing this accident. They also stipulated that the total amount plaintiff had received prior to trial was $33,500 and the jury would have to award in excess of this amount to permit his recovery against John Hancock. After a trial on the merits, the jury awarded damages to Mr. Hebert for this accident in the amount of $33,500. The jury further found that John Hancock’s conduct in failing to tender its policy limits was not arbitrary or capricious and rejected plaintiff’s claim for attorney’s fees and statutory penalties.
Plaintiff now appeals arguing that the damage award is inadequate and that the jury manifestly erred in failing to award penalties and attorney’s fees based on John Hancock’s failure to pay. Plaintiff also alleges that the trial court erred in taxing the expert fees incurred during trial to him. We find no manifest error in the findings of the lower court and therefore affirm the judgment.
The record reveals that immediately following the accident, Mr. Hebert sought medical treatment at Southern Baptist Hospital complaining of shoulder, neck and back pain. He continued to experience neck and shoulder pain and saw Dr. Donald Faust several days later. Dr. Faust examined Mr. Hebert’s neck and shoulder and prescribed anti-inflammatory medicine and recommended physical therapy. Plaintiff was dissatisfied with this treatment and on May 27, 1986 saw Dr. Robert Fleming, who hospitalized plaintiff for several days and diagnosed his condition as thoracic outlet syndrome. Plaintiff then sought a second opinion from Dr. Charles Johnson at Ochs-ner where he was hospitalized and underwent arthroscopic surgery on his right shoulder acromioclavicular joint. (A/C joint). He was ultimately referred to Dr. Robert Chuinard who diagnosed him as having a stage two separation in the A/C joint. On May 23, 1987 Dr. Chuinard performed surgery on plaintiff to correct this condition. It was stipulated at trial that plaintiff’s medical bills totalled $16,209.95.
Plaintiff argues on appeal that the separation of his shoulder joint which ultimately resulted in surgery was directly attributable to the automobile accident. Defendant’s position is that plaintiff’s shoulder injury was not caused by the automobile accident, but rather by several incidents which occurred prior to March 30, 1986.
Plaintiff had a history of shoulder problems dating back several years. He admitted in his testimony at trial that he had injured his shoulder while playing racquetball in 1974 and had sought medical treatment. He again experienced problems with his shoulder in 1984 while clearing weeds and in 1985 while moving furniture when his shoulder became sore and inflamed and he sought medical treatment on each of these occasions. Plaintiff further testified that he fell off of a six-foot ladder in 1984 and experienced soreness in his shoulder. He stated he was given cortisone and pain-relieving injections in his shoulder for this injury.
Mr. Hebert also testified that he again experienced problems with his shoulder in January and February of 1986 while he was working out with weights, for which he sought medical treatment from Dr. Donald Faust, an orthopedic surgeon. Plaintiff contends, however, that although he experienced pain and soreness in his shoulder, he was able to work and engage in sports and recreational activities without any problems prior to the automobile accident. He *576 testified that after the accident in March, 1986 he was in severe pain, was unable to sleep or concentrate at work and lost income as a result. He also stated that after the accident he could no longer participate in sports or other recreational activities, such as dancing, and could not lift heavy objects. He stated that the severe pain was only relieved by the surgery performed by Dr. Chuinard.
It is well settled in our jurisprudence that a tortfeasor takes the victim as he finds him, and must fully compensate the victim for the aggravation of a pre-ex-isting injury. Reck v. Stevens, 373 So.2d 498 (La.1979); McCray v. Abraham, 550 So.2d 244 (La.App. 4th Cir.1989). A defendant cannot be held liable for the injuries which are not attributable to his wrongful act. Williams v. Winn Dixie Louisiana, Inc., 418 So.2d 13 (La.App. 1st Cir.1982). Before recovery can be granted for aggravation of a pre-existing condition, a causative link between the accident and the victim’s current status must be established. Plaintiff’s burden is to prove causation by a preponderance of the evidence. Giesler v. United States Fidelity and Guar. Co, 498 So.2d 292 (La.App. 4th Cir.1986).
In the present case, plaintiff had the burden to show that the alleged wrongful conduct, the car accident, was a cause in fact of the resulting harm, a separation of the A/C joint in order to recover against John Hancock. Plaintiff testified at trial that following the automobile accident in March, he suffered from severe shoulder pain which he had not experienced before this accident and which made it difficult for him to sleep and work. Plaintiff’s wife and mother corroborated this testimony. Further, plaintiff’s supervisor at work testified that plaintiff missed a lot of work after the accident, and that his income decreased as a result.
Medical evidence presented at trial on the issue of causation consisted of several doctors who had treated plaintiff for his shoulder injury. Dr. Donald Faust stated that he saw plaintiff several months prior to the automobile accident and again several days after the accident, and was aware that plaintiff sustained shoulder injuries prior to the automobile accident. Dr. Faust testified unequivocally that the “vast majority” of plaintiff’s shoulder problems were pre-existing and his shoulder condition was only a “few percent worse following the accident.” He further stated that plaintiff was a candidate for surgery before the accident and the surgery performed by Dr. Chuinard was a result of plaintiff’s pre-existing shoulder condition, and not the automobile accident. Dr. Faust testified that plaintiff’s injuries incurred in the automobile accident had been resolved within three months from the date of the accident, and that after this time period, plaintiff was returned to his pre-ac-cident condition.
Dr. Robert Fleming, who saw plaintiff approximately two months after the accident, stated on the issue of causation that it was possible that the accident aggravated plaintiff’s pre-existing condition, although he stated he did not see plaintiff prior to the accident and was not aware of plaintiff’s history of prior shoulder injuries.
Dr. Gordon McFarland testified that he had seen plaintiff in April of 1985. His examination revealed a lump on plaintiff’s shoulder at the A/C joint, and also found plaintiff had some bicep tendinitis which was causing pain. Dr. McFarland stated that he did not believe that plaintiff had a separation of this joint at this point which would have required surgery. However, Dr. McFarland did not see plaintiff again after April 1985.
Dr. Robert Chuinard testified that he first examined plaintiff on April 30, 1987 when he diagnosed him as having a stage two separation of the A/C joint. He performed surgery to correct this condition and believed the surgery was successful. Dr. Chuinard stated that in his opinion, the automobile accident as related to him by plaintiff either caused this condition or aggravated a pre-existing condition. However, Dr. Chuinard did not see plaintiff prior to this accident, and was unaware of any prior injuries to plaintiff’s shoulder. Further, he testified on cross-examination that plaintiff’s shoulder separation was *577 more likely the result of a direct blow rather than being thrust forward and backward in his seat during the accident.
Our review of the present case is limited to an examination of whether the jury’s findings were manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In the absence of manifest error, the appellate court is not to disturb the finding of the jury which has evidence before it furnishing a reasonable factual basis for its verdict, based upon its reasonable evaluation of credibility. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The inference to be drawn from the verdict in the instant case is that the jury found that plaintiff only suffered a temporary injury to his shoulder in this automobile accident, and the major portions of his injuries were pre-existing. In deciding upon the award of $33,500.00, the jury must have concluded that plaintiff failed to meet his burden to show a causal relationship between the injury sustained by plaintiff in the automobile accident and plaintiff’s subsequent pain, loss of wages and resulting surgery.
In light of plaintiff’s testimony admitting his prior shoulder injuries, and the testimony of Dr. Faust that the injuries complained of by plaintiff were pre-existing rather than caused by this accident, we find this conclusion to be reasonable. Apparently, the jury gave weight to the testimony of Dr. Faust that the injury plaintiff incurred in the accident had resolved itself within three months of the accident. Dr. Faust was the only physician to testify at trial who had examined plaintiff both immediately before and after the accident. Dr. Fleming and Dr. Chuinard were unaware of plaintiff’s prior history of back problems, and Dr. McFarland had last seen plaintiff almost one year before the accident when he found the lump on plaintiff’s A/C joint. Based upon the evidence before us, we cannot say that the findings of the jury were manifestly erroneous. Since the evidence does not establish with a reasonable degree of certainty that the problems with plaintiff’s shoulder joint and the resulting surgery was caused by the automobile accident rather than by the pre-exist-ing condition, the jury’s conclusion that plaintiff is not entitled to recovery against defendant for the full extent of his injury is not clearly wrong. Under these circumstances, we find that the award of $33,500 for this injury to be well within the much discretion afforded the jury. Reck v. Stevens, supra.
Plaintiff argues that the jury’s determination that John Hancock was not arbitrary and capricious in refusing to pay the UM coverage policy limits is manifestly erroneous.
Under the provisions of La.R.S. 22:658, one who claims penalties and attorney’s fees has the burden of proving that the insurer has received “satisfactory proof of loss” as a necessary predicate to a showing that the insurer was arbitrary, capricious or without probable cause. To establish a “satisfactory proof of loss” of an uninsured motorist claim, the insured must establish that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages and establish the extent of those damages. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983).
In the instant case, we do not find that plaintiff carried his burden of proving that the fault of the other driver in the automobile accident gave rise to the damages suffered herein. Although John Hancock tendered the policy limits of the medical payment provisions, they refused to make any additional payment under the UM policy. Evidence at trial indicates that plaintiff had a long history of shoulder problems from which John Hancock could reasonably argue that plaintiff’s damages which exceeded the primary policy limits were the result of a pre-existing condition and not caused or aggravated by the March 30, 1986 accident. For these reasons, we find that John Hancock acted reasonably in contesting its liability under the policy and conclude that their conduct was not arbitrary or capricious in refusing to tender their policy limits. The jury's determination that plaintiff was not entitled to an award of penalties *578 and attorney’s fees under La.R.S. 22:658 is not manifestly erroneous.
In light of our determination that the jury award of damages was not manifestly erroneous, we find that plaintiffs argument that the trial court erred in taxing the costs of expert fees to him to be without merit. Under the provisions of La.R.S. 13:8666, the fees of expert witnesses are to be taxed as costs to be paid by the party cast in judgment. Because the jury found that plaintiff was not entitled to recovery against John Hancock over and above the amount he had already received, plaintiff was the party cast in judgment and the expert fees were properly cast as costs to him.
Accordingly, for the reasons assigned, the judgment appealed from is affirmed. Costs of this appeal are to be paid by appellant.
AFFIRMED.